26864. ADAMS *v.* GLENS FALLS INDEMNITY CO. *et al.*

DECIDED NOVEMBER 9, 1938.

*Judson Andrews, Homer A. Glore,* for plaintiff.
*Little, Powell, Reid & Goldstein, B. D. Murphy,* for defendants.

BROYLES, C. J. C. C. Adams instituted proceedings under the workmen's compensation act against Forrest R. Davis et al., to procure an award for injuries arising out of and in the course of his employment by Forrest R. Davis. The bill of exceptions recites that "W. R. Adams was made a party in the case before the hearing, . . and . . was present at the hearing and waived notice." The finding of the hearing director, which is fully set out in the bill of exceptions is as follows: "It is the finding of this director, after a careful study of the evidence, that the claimant, C. C. Adams, did not receive an injury arising out of and in the course of his employment while in the employ of Forrest R. Davis, but that claimant at the time of the alleged injury was in the em-

ployment of an independent contractor; and this director further finds that the evidence fails to disclose that the independent contractor in whose employment the claimant was at the time of the alleged injury comes within the workmen's compensation act, and the Industrial Board is therefore without jurisdiction over the independent contractor." The finding of the full board was: "After reviewing the record, all of the directors are of the opinion that the findings of fact of the hearing director are supported by the evidence. The conclusions of law and findings of fact of Director Monroe are therefore approved and made a part of this award, and the award denying compensation is affirmed." On appeal to the superior court the finding of the board was affirmed.

■ The first question with which we are confronted is whether there is merit in the motion to dismiss the writ of error, because the bill of exceptions "seeks to assign error upon the antecedent ruling of the Industrial Board and the antecedent ruling of a director of the Industrial Board," and "does not except to or assign error upon the decision and judgment of the court below, or undertake so to do." The bill of exceptions recites that "on the 23rd day of December, 1937, in Fulton superior court, before the Hon. E. E. Pomeroy, presiding, [came on] the case of C. C. Adams vs. Forrest R. Davis et al., the same being an appeal from the Industrial Board of Georgia, growing out of the ruling of the Hon. Harry Monroe, director of the Industrial Board, denying jurisdiction as of August 23rd, 1937, and the ruling of all the directors of said board, affirming said single director, as of September 20, 1937. . . On the 8th day of January, 1938, the Hon. E. E. Pomeroy affirmed the previous ruling of the Industrial Board, adversely to your movant. *To this adverse ruling of the Hon. E. E. Pomeroy, judge then and there presiding, affirming the previous ruling of the entire Industrial Board of Georgia,* which also was merely affirming the ruling of the Hon. Harry Monroe, single director of said board, *to which ruling he then excepted, now excepts, and assigns same as error* [italics ours], and the more specific errors alleged: 1. The facts found by the directors did not support the decree. 2. There was not sufficient competent evidence in the records to warrant a finding for the defendant, *affirming the directors.* [Italics ours.] 3. The order or decree is contrary to the law." The exception, while somewhat confused,

is sufficient to cover the ruling of Judge Pomeroy in affirming the award of the Industrial Board.

■ If, as found by the director, W. R. Adams was an independent contractor, the Industrial Board was without jurisdiction as to him, because the evidence failed to show that he was operating under the provisions of the workmen's compensation act. If, as found by the director, the claimant at the time of his alleged injury was in the employment of W. R. Adams, an independent contractor, and not in the employment of Forrest R. Davis, the Industrial Board was without jurisdiction of Davis, because the relation of master and servant did not exist between him and the claimant. Therefore the controlling issue in the case is whether W. R. Adams was an independent contractor. "In claims for compensation under the workmen's compensation act, where the question is whether the injured person, or the person under whom he was working, occupied the relation of an employee or of an independent contractor toward the alleged employer, the line of demarcation is often so close that each case must be determined upon its own particular facts. The chief test to be applied, however, in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract. *Home Accident Ins. Co.* v. *Daniels* [42 *Ga. App.* 648, 157 S. E. 245]; *Cooper* v. *Dixie Construction Co.,* 45 *Ga. App.* 420 (2) (165 S. E. 152) ; *Poss Lumber Co.* v. *Haynie,* 37 *Ga. App.* 60 (2) (139 S. E. 127)." *Liberty Lumber Co.* v. *Silas,* 49 *Ga. App.* 262 (2) (175 S. E. 265). "Findings of fact made by the Department of Industrial Relations within its powers are, in the absence of fraud, conclusive, provided there is any supporting evidence. With respect to the sufficiency of the evidence to sustain an award by that department, the award stands in this court upon the same footing as the verdict of a jury approved by a trial judge in other cases. *Maryland Casualty Co.* v. *England,* 160 *Ga.* 810 (129 S. E. 75) ; *Home Accident Insurance Co.* v. *Daniels,* 42 *Ga. App.* 648 (157 S. E. 245) ; *London Guarantee &c. Co.* v. *Shockley,* 31 *Ga. App.* 762 (122 S. E. 99)." *Liberty Lumber Co.* v. *Silas,* supra.

The claimant, C. C. Adams, testified that "on or about the 15th day of October, 1936, he was working on the Forrest R. Davis job on Peachtree Battle Avenue, laying brick, and his brother Bob [W. R. Adams] was his immediate superior, paying him seventy-five cents an hour; that he was supposed to work forty-four hours a week; that Mr. [Forrest R.] Davis was constantly on the job, and Mr. Mabry was on the job as general superintendent; that Mr. Tatum was carpenter for them; that his brother gave most of the general instructions;" that "Mr. Forrest Davis gave him instructions by telling him to take out a short brick and put a long brick in;" that on another occasion, while his brother was at the front of the building and witness was working at the back end, either Mr. Davis or Mr. Mabry told witness "to cut off a brick that was too long;" that he "was injured on the job about the 15th of October when he started to cut a brick and a piece flew off and hit him in the eye;" that he "was working for his brother, who told him when to go to work and when to quit, how many hours to put in, and . . fixed his wages;" that "there were two other brickmasons on the job besides his brother, and his brother fixed their hours to work and paid their wages;" and that after he was injured "Mr. Davis told him he had insurance, and for him to . . see the insurance company and see what they would do about it." W. R. Adams testified that he "contracted with Mr. Davis to do the brick job on the house at 81 Peachtree Battle Avenue;" that he "had the contract to do all of the brickwork on the house at so much a thousand; that he employed his brother and paid him seventy-five cents an hour; that he kept the time and paid the other bricklayers and employed the helpers who were needed there; that Mr. Davis paid him according to the contract, and he used the money to pay the helpers; that every man furnished his own tools; that when Mr. Davis wanted to take up a matter of the conduct of the work he talked with him about it, . . and he gave instructions to the men that he had employed; that Mr. Mabry, the superintendent, came by every morning and discussed the various phases of the work with him;" and that "Mr. Davis paid him so much a thousand for brick laid, and out of this he paid his help, including his brother." Forrest R. Davis testified that he owned the building that was being built, and "contracted with W. R. Adams to do the brickwork," paying him "$10 for the common and $15 for the

face brick;" that "he had nothing to do with the help he used," and nothing to do with hiring the claimant; that "he dealt with Mr. Tatum and Mr. Adams as far as the brickwork was concerned, and gave instructions through them; that he did not pay Mr. Adams' help or carry them on his pay-roll; that if there was any question up about brick, he would say to that fellow, 'Wait a minute, that won't do,' and go and tell Bob Adams, and he would go and attend to it; that he never gave any orders to Mr. C. C. Adams or any of the other laborers there under Mr. W. R. Adams about when to go or come, but that when he wanted to give instructions about brickwork, he gave the instructions to W. R. Adams and let him give the orders to his own men;" that "Mr. C. C. Adams and the men working for W. R. Adams were not reported on his pay-roll to the insurance company, but that Bob Adams was included;" and that "the brickwork and electric work and carpenter work and plastering all went on in unison, and he hired them to put it on just like he wanted it done." M. H. Tatum testified that he "was foreman in charge of the carpenter work;" that he dealt with W. R. Adams and Mr. Davis "in connection with the brickwork;" that "Mr. Davis gave instructions to Bob Adams about the brickwork and . . Adams, in turn, gave the instructions to the men working under him;" that witness "didn't give any orders or instructions to Mr. C. C. Adams either for Mr. Davis or otherwise;" and that "the entire job was under the general heads, he and Mr. Davis and Mr. Mabry." We have omitted testimony tending to show the extent of the injury to the claimant's eyes, and other testimony which has no bearing upon the question at issue.

In addition to the cases already cited, we wish to mention the recent case of *Richards* v. *Marco Really Co., 57 Ga. App.* 242 (194 S. E. 880), where the facts strikingly resemble those in the instant case, and the question of independent contractor was involved. Applying the rules of law hereinbefore quoted to the facts of this case, we are satisfied that the finding of the Industrial Board was correct, and that the judgment of the superior court affirming that finding was not erroneous.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*